Good morning, Your Honors. May it please the Court, my name is Michael Kaye. I represent myself as Plaintiff Aaron McCollum. In this case, I'd like to reserve three minutes for rebuttal. The parties completed briefing in this case a little more than two years ago. In the interval since then, there have been some significant new developments that affect two parts of this appeal. I propose to devote our oral argument to dealing with the need for updating the briefing on those two issues, which are the threshold question of appealability. There's been a new case from the Supreme Court and from the Ninth Circuit dealing with the standards of finality that affect that issue. There's also been a new decision out of the California Court of Appeal in the State Court branch of this litigation, really a spin-off from this case. That new Court of Appeal decision has anticipated and prejudged one of the core questions that are before this panel, namely the question of what are the standards, what are the procedures for relinquishing supplemental jurisdiction after a district court declines to exercise supplemental jurisdiction. It behooves me, in the event that the court takes judicial notice of the proceedings from that parallel litigation, it behooves me to address the problem of whether that parallel litigation in that final appellate judgment has collateral stoppable effect on this appeal. There's a third significant issue in the case which I do not think there will be time to reach. That's the problem of the due process rights of public employees. I intend to submit on the briefs with respect to that issue unless the panel prefers to redirect oral argument in that direction. Turning then to the threshold question of appealability, there is the question unless my colleagues are interested in it, I, it seems to me that there's a final judgment. It was entered. You think there's something, that there's a claim in the air someplace, but nobody else seems to think so, and I'm not quite seeing why that's true. There's a final judgment. The claim was dismissed. It's not, it wasn't remanded, but it was dismissed because there's a final judgment. So what's the problem? Your Honor, it was not dismissed. But overall, there's a final judgment in the case. And in general, if there's a final judgment in the case, any claims that aren't dealt with until then are considered dismissed. That's the end of it. The case is over. The problem is that under the classical analysis of the final judgment rule that came from Kaplan v. United States, a judgment is final for purposes of supporting an appellate jurisdiction only if it ends the litigation on the merits and leaves the district court with nothing to do except to enforce the judgment. The problem was that the judgment in this ---- Kagan. I'm just quibbling over the difference between I'm declining jurisdiction and I'm dismissing the claim. But the court never dismissed the claim. But he dismissed the case. He entered judgment in the case. He did enter judgment in the case. So why isn't that the end of it? The end is better under the new case law, the Mohawk Industries v. Carpenter from the Supreme Court and Harmston v. City and County of San Francisco from the United States. No, no, no. Not at all, Your Honor. I raise this only because I thought you would be concerned with the jurisdictional problem, even though it hasn't been raised by the appellate. It's only a jurisdictional problem if we agree with you that there's something running around in the air. Okay. We agree that there's something running around in the air, so it's a jurisdictional problem. Well, Judge Berzahn said a while ago, unless her colleagues have a different view, we can move on to the next issue. So I don't think we have a different view. The next issue is the problem of the State appellate decision in the K-3 litigation. There are complicated issues of priority when there's parallel litigation between the ---- Isn't this a matter for the State courts to worry about? I was only concerned that you would consider that case somehow binding on this panel with respect to the issue of the method of relinquishing supplemental jurisdiction. The State court was not trying to usurp your appellate jurisdiction to review the district court judgment. It had its own reasons why it ---- I think it might be worthwhile getting to the merits of the case, which I think you considered point three that you might not get to. Okay. Let's try the merits. If I can back up for just a half a moment, the reason why collateral estoppel doesn't apply to that K-3 final decision has to do with the decision that Judge Berzahn wrote 10 years ago for the Ninth Circuit. That must be a brilliant decision, binding on this. At any rate, the case was the Ryan Tire Corporation versus Goodyear Tire and Rubber, and that's what says that the Ninth Circuit conducting direct appellate review of a district court judgment that was first in time is not subject to collateral estoppel from any intervening State decisions that ---- So let's go to the merits. Okay. The merits of the case, then, is that there are two conflicting lines of authority dealing with whether a property interest exists in public employment. On the one hand, if there is a statute or other provision that says that the employee is terminable at will or that the employee serves at the pleasure of the appointing authority or that the employee is removable at the pleasure of the appointing authority, that kind of provision usually means that the employee has no property interest, no legitimate claim of entitlement to continued employment, and no right to due process. On the other hand, if there is a provision that says that the employee can be fired only for cause or any other kind of a substantive restriction on the otherwise unlimited discretion of the employer to fire the employee. So what's the evidence you point to in this case is showing that there was some sort of substantive restriction? First of all, the law library had a longstanding practice which I submit would support an inference that there was a policy on which that practice was based, that the library never fired nonprobationary employees. It never fired employees who had finished their probationary period except for cause. So what's the – and I understand you contend that was the practice. What's the evidence that that was the library's practice? What's in the record? First of all, the Board of Trustees responded to interrogatories. Those interrogatories show up in Volume 2 of the excerpts of the record beginning at page 100. At page 101, line numbers 23 to 25, the Board responded that it could not recall in its entire institutional memory of any instance in which any nonprobationary employee had ever been fired without cause. Then on page – So basically what you're saying is that the fact that they've never done it is evidence that there was an understanding that they would never do it. There was a – I probably didn't say that quite the way intended. There was an actual longstanding practice that could be interpreted either way, but it could support an inference that they had a policy not to fire employees without cause. Then again, one page later in the same answers to interrogatories, page 102 at lines 22 to 24, the Board stated that the law library typically evaluates and Again, that was a longstanding practice, a longstanding policy that is actually in – it's not a position that employees are simply terminable. Well, what does that mean? I mean, here they certainly did base their determination on his conduct. I mean, whether it is cause or not cause is a different question, but they certainly based it on his conduct. Well, what it is is it shows that employees are ordinarily not terminable arbitrarily. They're not terminable without any good reason. They're just – They're not terminable for having red hair, but that's not what happened here. Again, the distinction in the cases is that if there is a substantive restriction on the power of dismissal or on any kind of disciplinary action, that substantive restriction supports an expectation, not a unilateral expectation, but a mutual understanding that the employees have some form of job security and they're not going to be fired arbitrarily without cause. I guess what I'm having trouble with is the idea that the proposition that the fact that they've never terminated somebody without cause amounts to a restriction that they won't. In other words, I don't see how you get from point A to point B there. You mean you agree there has to be a restriction, and the fact that somebody says, well, we've never really fired anybody unless we had a really good reason to do that, that doesn't mean they're admitting that there's a restriction that they can't. They're just saying they've never done it that way. What I am saying is that it's a tribal issue of fact. It should not have been resolved on summary judgment. And it wasn't just the board responses to interrogatories. There were similar responses to interrogatories from Joan Allen Hart. Are there anything other than these interrogatory responses that you referred to, whether they're from the board or from the- There was also the American Association of Law Libraries has a, well, for the past 35 years they've had a job security policy. The fact that a trade association says that there ought to be restrictions doesn't mean that this board had any, does it? That's true, except that in the case of Walker versus Northern San Diego County Hospital District, the existence of standards or practices of the industry is one factor. Not sufficient by itself, but it's one factor that can be taken into account. If we thought we needed some rule regulation or practice promulgated by the library board and not just, not a surmise from circumstances, what is there? Anything? Well, shortly after I was fired, the library adopted a new personnel manual which memorialized what had been the prior longstanding practice and policy of the library. Again, it speaks in both directions. It says both that they want to argue that employees are terminable at will, but at the same time it sets out, let me see if I can find that for you, in the 2007 personnel handbook it begins at volume two of the excerpts of record at page 131 with the key language at pages 133 and at the top paragraph at page 135. Again, the library is saying that discipline will ordinarily only be based on misconduct or substandard performance. Again, the library is talking in both directions. It says that employees are terminable at will. At the same time, it's saying, but we're not going to act arbitrarily. But that's after you were fired. So I gather what existed before that was a practice of having hearings. A practice of having hearings. Oh, there was. Was that in the handbook at the time? The handbook has changed over time. Again, the only reason I refer to the 2007 handbook is that it memorialized what had been the practice and what the Board of Trustees admitted in its response to the derogatories had long been the practice of the library. Another thing that's kind of awkward for the library to explain is that it had the long-term practice of issuing Skelly notices whenever they were proposing disciplinary law. Well, Skelly doesn't matter because you, in fact, got a Skelly hearing. Yes. Well, it was imperfect, but I got a Skelly hearing. All right. The Skelly hearing itself only is given to employees who have a legitimate claim of entitlement to continued employment. There is California case law that says that unless you have a property interest in continued employment, you're not entitled to a Skelly hearing. Unless they lied to anyone, which they did. The library had been doing that. Again, in the response to the derogatories from June Allen Hart, she couldn't recall any instance in which any employee had ever been, any non-probationary employee had ever been fired without a Skelly hearing. Is there some rule against having a chance for an employee to contest his firing even if he doesn't have a property right? It's a good practice that they had it. But, again, it's something that would support an inference that this wasn't just a unilateral expectation on my part, but a mutual understanding. Because why would the library provide Skelly hearings, and especially in this case where the Skelly hearing officer delayed for some three months before she issued her hearing, before she issued her decision, and during that entire period of delay. And the purpose of a Skelly hearing is to provide a very quick answer, a preliminary answer to be followed up by a later full evidentiary hearing. It's supposed to be quick and easy and not cost a lot of money or trouble, yet the library waited three months before terminating me. It had me on suspension and on house confinement, at least during working hours, during that full three months. And they kept paying me while they were waiting for the Skelly decision to come out. That seems to indicate it would support an inference that the library truly believed that employees of the library have a property interest and that they had an obligation to comply with the requirements of due process. Again, shortly after I was fired, there was a letter from Gail Lawrence, the library's personnel and finance officer, to me dated August 8, 2006. And when I need the reference, I'm sorry, I don't have it right at my fingertips, where she offered a post-termination evidentiary hearing to be conducted by a neutral hearing officer. Again, that full evidentiary hearing with an impartial hearing officer is a typical requirement of post-termination due process for employees who have a legitimate claim of entitlement to continued employment. It's relatively rare that that is ever offered to an employee who's terminable here. Do you know of any case which inferred a property right from the fact that hearings were given instead of in the other direction? The main thing that I think that evidence supports is that my expectation of due process was not a unilateral expectation. It was a mutual understanding. The library itself believed that there was at least an arguable claim to due process, that it felt that it needed to provide due process whenever it terminated, not just in my case, but in other cases of any non-probationary employee. All right. Thank you, counsel. Good morning, Your Honor. Excuse me. May it please the Court. Margaret Bell, on behalf of athlees, the Board of Trustees of the San Diego County Public Law Library, the San Diego County Public Law Library, and its director, Robert Rieger. I just want to bring the Court back to the case of Miller v. State of California. It's a California Supreme Court decision that states that the terms and conditions of public employment are determined by statute, not contract or anything else. Well, it's by statute, but statute means that whatever policy the local entity has adopted then becomes what's applicable. If there's a policy to find cause, certainly if it's done by ordinance, there's no question. If it's done in a manual, there's no question. Isn't the issue here whether if it's done by contract, there's no question, even though the statute says, well, the Supreme Court said by law, not contract. That's not really quite true anymore, I think. But isn't this an express contract and an implied contract? The issue becomes, is there another way to get around an articulation of an at-will statutory provision like we have here with business and professions code section 6345, which provides for at-will employment? Is there a way that Mr. Kay can argue around that with policies, practices, et cetera, by the Board of Trustees? There are cases that hold that certain policies, procedures, manuals may arise at a level of a regulation by an arm of the government. In this case, we don't have anything that rises to the level of a regulation of the Board of Trustees. Mr. Kay cites, too, a practice that's not in writing. It's something that an individual articulated at a deposition and was in response to discovery that there is a practice. Well, that's where it hits you, basically. Isn't the difference between whether it's in writing or not in writing? A statute or regulation needs to be in writing to be implemented and enforced. Well, if it's a policy adopted by the department involved, let's say you're a city instead of the library. It's the city of San Diego. If its fire department had a policy in its manual, that would be applicable, wouldn't it? And there have been cases that held that certain manuals do rise to the level of a regulation. The manual that Mr. Kay refers to in this case, which is found at the record at page 132 and 133, specifically cites to Section 6345 and states that the library employees are at will and that nothing in that policy detracts or is to be ---- I was just asking you a general question, which you seem a little reluctant to answer, isn't the difference simply whether the rule, if there's a rule, is in writing or if it's not in writing? If it's not in writing, how are people going to know about it? It's a simple question. I didn't ask you for a defense of the theory. I just said, isn't that the difference? Your view is if it's in a manual and it's in writing, then it's in spite of what the state statute says that that governs. If they said you won't be fired except for just cause in the manual, that would be binding on the governmental entity. If it is something that rises to the level of a statute regulation or ordinance, then it would be in writing and it would. In this particular case, though, the only thing in writing is a handbook that states that his employment is at will, which is not contrary to the statute. In other words, the answer to the question is yes, that's the difference. If it's in writing, it's binding. If it's not, it's not. If it's in writing and it's a document that rises to the level of a regulation, not everything the board would write would constitute necessarily a regulation or statute or ordinance. And in this particular case, we're looking at a practice which is not in writing, a trade association practice or policy which is not binding on the library, and an employee handbook that states that his employment is at will. So there's no ‑‑ Was there anything in writing or enunciated, whether in writing or not in writing, with regard to the hearings, the fact that hearings would be held if people were fired? And does that matter? Nothing that's in the record that I'm aware of. It ‑‑ there ‑‑ the board of trustees is a somewhat fluid entity, so are ‑‑ and the director was relatively new. So things do change from time to time. I'm not aware of something that was in writing that indicated that they were going to provide every employee some type of a pre-termination or post-termination hearing. They did have a grievance procedure that was available to them, not necessarily an evidentiary hearing, but a grievance procedure, like a lot of entities, private and public employers have, to allow their employees to appeal or have ‑‑ or be heard on their termination. So Mr. Case seems to be saying that the existence of those procedures essentially implies that there had to be a reason. In other words, why would you need the procedures if there didn't have to be a reason for firing? What about that? I'm not aware of any law that, because you have procedures, it allows the employees to enjoy a property interest in their employment. The question here is, did he have a property interest in his employment? That's a question of state law, which here we have an articulation of at will employment subject to state law, and that only other regulation or policies that equate to regulation can impact that. An expectation or a practice of providing hearings does not impact whether or not an employee has a property interest in his employment. And I'm not aware of any case, you asked the question, I'm not aware of any case that provides for that. Any other questions? I, just briefly on all this procedural stuff, what is your ultimate position about the state claim that ended up being precluded in the second case? Our position is that the federal court, when it dismissed the federal due process claims, it entered judgment in our favor and, as such, declined to exercise jurisdiction over the labor code state claim and, in effect, dismissed it. It wasn't entertaining it. It was no longer worth a case. The case was closed. It dismissed the state claim. But isn't your ultimate position that the whole thing's moot anyway? It is moot because he did file that same claim in state court, and it's been finally adjudicated. So whether you dismiss or remand at this point in time, it's meaningless. All of the state claims have been finally adjudicated. This is our third appeal at this time. The only thing that bothers me about it, and it may all be moot, is why wouldn't the district court remand it? It does create — I understand we say occasionally that they have discretion to dismiss it, but why should they have that discretion? Why shouldn't they just remand it? And the court was silent on that, and — I'm not asking you that. I'm asking you what the rule ought to be. I mean, why would — what would be an appropriate exercise of discretion, especially if it's not set, for not remanding and making everybody else — everybody's life easier? It certainly would have made everybody's life easier. I don't know if it would have, because he could easily, at that point when the judgment was entered in our favor, go across the street and pursue a state claim in state court. It doesn't matter if it's dismissed or remanded. It's easier if it were remanded. So why not remand it? It would have been easier because it wouldn't have had to refile an amendment because the case would have been there, and it wouldn't have had — it just would have been, you know, maybe marginally, but easier. So why not do it? A little bit easier. And he did request the court to do it, and the court denied that request. I'm not asking you. I'm asking you if you were trying to explain what rule we should have. Why wouldn't we have a rule that says, absent an awfully good reason, and at least some reason, which none was given here, you're supposed to remand it? Well, number one, that's not an issue necessarily before the court that we have briefed, but I think it's in the discretion of the court. The issue that he appealed is the issue of remand. I didn't give a reason. So if it's in the discretion of the court, you need a reason. He didn't give a reason. In the discretion of the court, he declined to exercise jurisdiction over the State claims. And it could be an abusive discretion. We can't tell because we don't know the reason. Exactly. And what would be a reason? What would be a decent reason for doing it? I can't think of one. I'm sure there's reasons why you would dismiss over remand or remand over dismissal. Off the top of my head, I don't know the answer to that in every circumstance. In this particular case, I don't think it made a difference because he had a pending State claim that he could go and amend his claim, amend that complaint to add in an 1198.5 claim. It's not a very difficult process to do. And he had the opportunity to do it, and he sat on his rights. He sat on that claim until there was a judgment in the State case. Thank you, counsel. Thank you very much. Your Honor, I exhausted my time. May I? We'll give you another minute. Thank you. Ms. Bell suggested that the same claims in State court had been adjudicated. I'd like to clarify that the due process, the State due process issue that was dealt with by the State trial court in the K-3 litigation was a different due process issue. It was a liberty interest due process issue, not a property interest due process issue. In my original complaint, I spent several pages working out the sources of the property interest in due process. None of that is repeated in the K-3 complaint. It deals only with liberty interest due process, and the court's order sustaining the demurrer only dealt with liberty interest due process, not the same thing as the due process issue that's pending before this Court. Also, the trial court ruled on the Labor Code claim, but the appellate court declined to rule on the Labor Code claim. That is the source currently of a conflict between a Ninth Circuit precedent in at least three California Court of Appeal decisions that have been published in the aftermath of the DeRouza case. That was the reason why I had requested LEAF to submit a supplemental brief to deal with that conflict and to show why DeRouza could be and should be overruled and why the panel has authority to do it. Without authority to submit that supplemental brief, it's not enough time to deal with that. The Labor Code claim, that's the 1198.5 claim. Pardon me? The Labor Code claim, that's the 1198.5 claim. You say that the appellate court declined to rule on it. That's not really what happened. At least, I'm looking at the supplemental, one of the supplemental motions you filed. Basically, the appellate court points out at page 24 that the trial court has sustained a demurrer because there was no private right of action, and you didn't make any arguments, so you abandoned it. That sounds like a ruling to me. Your Honor, if you then look to Exhibit 11, attached to the same supplemental well, the request to take judicial notice of supplemental documents, in Exhibit 11, there was a modification order issued on October 25th of 2010, and that withdrew completely its prior discussion of the Labor Code issuance. Thank you very much, Your Honor. Thank you, counsel. Case just argued will be submitted.
judges: Kennelly, Reinhardt, Berzon